UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN CHRISTOPHER MICKEY, CDCR #AD-2970,<br><br>                            Plaintiff,<br><br>vs.<br><br>SERGEANT WILLIAMS, et al.,<br><br>                            Defendants. | Case No.: 3:24-cv-01751-RBM-LR<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. § 1915A** |

    Plaintiff Ryan Christopher Mickey, a state prisoner proceeding *pro se*, has filed a Complaint pursuant to 42 U.S.C. § 1983 and has paid the civil filing fee. (Docs. 1–2.)

**I.    Screening Pursuant to 28 U.S.C. § 1915A**

    **A.    Standard of Review**

    The Court must conduct an initial review of the Complaint under 28 U.S.C. § 1915A, which "mandates early review—'before docketing [] or [] as soon as practicable after docketing' — for all complaints 'in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016) (quoting 28 U.S.C. § 1915A(a)). "'On review, the court shall . . . dismiss the complaint, or any portion of the complaint,' if it '(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from

1

a defendant who is immune from such relief.'" *Olivas v. Nevada ex rel. Dep'. of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (quoting 28 U.S.C. § 1915A(b)).

Screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). "The Rule 12(b)(6) standard requires a complaint to 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). There must be more than "labels and conclusions" or "a formalistic recitation of the elements of a cause of action," to plausibly state a claim, because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

"Under § 1915A, when determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "But where the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but it has not 'show(n)'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

B.   **Allegations in the Complaint**

Plaintiff identifies three "incidents" which occurred while he was housed at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, in which the three Defendants named in this action, RJD Correctional Officers Williams, Corona and Velasquez, are alleged to have "targeted" and "profiled" Plaintiff to prevent him "from

being commuted or paroled." (Doc. 1 at 2.)  He alleges: (1) Defendant Williams filed frivolous write-ups, (2) Defendant Corona threatened him and enlisted Defendant Velasquez to issue a frivolous write-up, and (3) Defendant Velasquez conspired with Defendant Corona to issue frivolous write-ups, all with the sole intention of preventing Plaintiff from being paroled or having his sentence commuted. (*Id*.)

Specifically, Plaintiff alleges that on July 22, 2024, while outside walking on the track with another inmate, Defendant Sergeant Williams, whom Plaintiff had never encountered before, ordered Plaintiff to be searched. (*Id*. at 8.) Protocol required both inmates to be searched, but Williams directed the other inmate to leave. (*Id*.) Plaintiff had picked up a small necklace while walking on the track and had placed it on the top of his hat, intending to turn it in, which Williams confiscated. (*Id*.) Plaintiff "was later written up for contraband and [Williams] called it a 'Chain-link Chain.'" (*Id*.) Plaintiff "told the sergeant that heard the write up, that everything on the write up was true," but also told him that he felt as if he were being targeted because he had done nothing wrong. (*Id*.) Plaintiff alleges the paperwork falsely reflects he pleaded guilty, when in fact he "simply stated that I agreed with the verbiage on the write up he was reading aloud to me because it was the truth. I did have a necklace on my hat. But again, was not doing anything wrong and this necklace posed absolutely no threat to the safety & security of the institution and Sergeant Williams had no business searching me to begin with. I was found guilty of possessing contraband." (*Id*.)

The second incident occurred on August 8, 2024, when a new prisoner was placed in Plaintiff's cell. (*Id*. at 9.) The new prisoner told Plaintiff he used heroin, but since Plaintiff does not use drugs they both agreed they were incompatible, and the new prisoner was moved to a different cell. (*Id*.) When Corona "came on duty and was told of the prisoner move, Corona banged his fist on the desk and began demanding that they set me up," and said, "he would make sure that I went down and never go home." (*Id*.) Shortly after Corona made that statement, Corona and Velasquez had "a heated conversation" with each other "planning to set [Plaintiff] up." (*Id*.)

The third incident occurred on September 1, 2024, when Plaintiff was called down to the program office to review footage of an incident where he was falsely accused of and written up for refusing a cellmate. (*Id*. at 10.) Williams opened the door to the office and asked Plaintiff what he wanted. (*Id*.) When Plaintiff said he had been called to the office, Williams told him to "take those earrings out of your ears." (*Id*.) Plaintiff explained that they were permanently crimped in and would need to be cut out, which Plaintiff had already arranged to do with medical staff, but Williams said, "I'll pin you down and cut them out myself." (*Id*.) Plaintiff backed into an area to where a surveillance camera could record video and audio and asked, "so, you're going to assault me?" (*Id*.) Williams "said in a panicked voice 'I'm only having a conversation' and hurried into the office." (*Id*.)

Plaintiff contends all three incidents were captured on surveillance cameras and are available to be viewed in support of his claims. (*Id*. at 9–10.) He claims the Defendants' actions amounted to cruel and unusual punishment, a violation of due process amounting to a "loss of freedom," and "harassing, targeting and profiling . . . turning into retaliation." (*Id*. at 3.)

### 1) Eighth Amendment

Plaintiff first alleges the Defendants' actions subjected him to cruel and unusual punishment. (Doc. 1 at 3.) The Eighth Amendment forbids prison officials from "the unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). An Eighth Amendment violation includes an objective prong, which requires the deprivation to be "objectively, sufficiently serious," and a subjective prong, which requires allegations that the prison official had a "state of mind [] of 'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see id*. at 837 (holding that a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.")

Plaintiff's allegations that he was threatened and harassed fail to state a claim because the mere making of threats or harassing comments do not give rise to a civil rights

1  claim under § 1983. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *amended by*
2  135 F.3d 1318 (9th Cir. 1998) (verbal harassment is not cognizable as a constitutional
3  deprivation under § 1983); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)
4  (verbal harassment or abuse is not constitutional deprivation under § 1983); *Gaut v. Sunn*,
5  810 F.2d 923, 925 (9th Cir. 1987) ("[I]t trivializes the Eighth Amendment to believe a
6  threat constitutes a constitutional wrong."); *Somers v. Thurman*, 109 F.3d 614, 622 (9th
7  Cir. 1997) ("the exchange of verbal insults between inmates and guards is a constant, daily
8  ritual observed in this nation's prisons" of which "we do not approve," but which do not
9  violate the Eighth Amendment).

10  Plaintiff's Eighth Amendment claim is dismissed *sua sponte* under 28 U.S.C.
11  § 1915A for failure to state a claim. *See Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 679.

12  **2) Due Process**

13  Plaintiff claims Defendants' actions violated "due process and loss of freedom
14  resulting from frivolous write ups." (Doc. 1 at 3.) The Due Process Clause of the
15  Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or
16  property, without due process of law." U.S. Const. amend. XIV, § 1. A prisoner is entitled
17  to due process protections during disciplinary proceedings where protected liberty interests
18  are at stake. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003). To show a
19  disciplinary proceeding implicates a liberty interest protected by the Due Process Clause,
20  a prisoner must show that his sentence was exceeded in "an unexpected manner" or resulted
21  in "atypical and significant hardship on the inmate in relation to the ordinary incidents of
22  prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). If no such liberty interest is
23  implicated, a prisoner is granted minimum due process protection, which requires only that
24  the outcome be "supported by some evidence in the record." *Superintendent v. Hill*, 472
25  U.S. 445, 454–55 (1985). If a protected liberty interest arises, due process requires written
26  notice of the charges and evidence relied on and the reasons for the action taken, an
27  opportunity "to call witnesses and present documentary evidence in his defense when"
28  doing so "will not be unduly hazardous to institutional safety or correctional goals,"

1 | assistance at the hearing if he is illiterate or the matter is complex, and an impartial factfinder. *Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974).

To the extent Plaintiff alleges he was falsely charged with a disciplinary infraction he does not state a due process claim because "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports." *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997); *see also e.g. Gadsden v. Gehris*, No. 20cv0470-WQH (DEB), 2020 WL 5748094, at *8 (S.D. Cal. Sep. 25, 2020) ("The allegations of the filing of false disciplinary charges by itself does not state a claim under 42 U.S.C. § 1983 because federal due process protections are contained in the ensuing disciplinary proceedings themselves.")  To the extent Plaintiff claims he was denied due process during disciplinary proceedings on any "write up," there are no factual allegations as to whether he was denied any procedural rights in connection to a disciplinary proceeding. *Wolff*, 418 U.S. at 564–71.  Neither has Plaintiff identified an adverse action taken against him. *See Sandin*, 515 U.S. at 480 ("The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed.")

Accordingly, Plaintiff's Fourteenth Amendment due process and "loss of liberty" claims are dismissed *sua sponte* pursuant to 28 U.S.C. § 1915A for failure to state a claim. *See Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 679.

### 3) Racial Profiling

Plaintiff alleges the Defendants engaged in "racial profiling" but without any factual allegations that any action was taken because of his race. (Doc. 1 at 3.)  Conclusory allegations of racial profiling "unsupported by any facts as to how race entered into any decisions" are insufficient to give rise to a plausible § 1983 claim. *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

To the extent Plaintiff intended to bring an equal protection claim, he must set forth facts which plausibly allege intentional discrimination based on membership in a protected

class. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status."); *Taylor v. Delatoore,* 281 F.3d 844, 849 (9th Cir. 2002) (prisoners are not a protected class for purposes of stating an equal protection claim). Because there are no factual allegations in the Complaint which plausibly allege any Defendant acted out of racial animus, Plaintiff has not stated a claim for racial profiling or equal protection.

Plaintiff's racial profiling and equal protection claims are dismissed *sua sponte* pursuant to 28 U.S.C. § 1915A for failure to state a claim. *See Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 679.

### 4) Retaliation

Finally, Plaintiff claims the Defendants' actions were "harassing, targeting and profiling . . . turning into retaliation," based at least in part on a grievance he filed against Defendant Williams. (Doc. 1 at 3.) "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (2005) (footnote and citation omitted). Plaintiff must also allege a retaliatory motive, that is, a causal connection between the adverse action and his protected conduct. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

Even assuming Plaintiff can allege an adverse action was taken against him in connection to a disciplinary action, he has not plausibly alleged any Defendant took an adverse action against him *because of* any protected conduct. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act); *see also Rhodes*, 408 F.3d at 567–68. Although Plaintiff states he filed an inmate grievance against Defendant Williams based on the incident where he was searched and found guilty

of possession of contraband, there are no factual allegations that any Defendant took any adverse action against Plaintiff because of that grievance or that it was a substantial or motivating factor in any decision by any Defendant. *Soranno's Gasco, Inc.*, 874 F.2d at 1314; *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient.")

Plaintiff's retaliation claim is dismissed *sua sponte* pursuant to 28 U.S.C. § 1915A for failure to state a claim. *See Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 679.

### C. Leave to Amend

In light of his pro se status, the Court grants Plaintiff leave to amend to attempt to cure the pleading deficiencies identified in this Order. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## II.   Conclusion and Order

Good cause appearing, the Court **DISMISSES** Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted and **GRANTS** Plaintiff leave to file a First Amended Complaint which cures the deficiencies of pleading noted by **September 12, 2025**. Plaintiff's First Amended Complaint must be complete by itself without reference to any prior version of his pleading, and any defendants not named and any claims not re-alleged will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.")

If Plaintiff fails to timely amend by **September 12, 2025**, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164,

1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED**.

Dated:  July 28, 2025

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:24cv1751-RBM-LR