UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

RYAN CHRISTOPHER MICKEY, CDCR #AD-2970,
Plaintiff,
vs.
SERGEANT WILLIAMS, CORRECTIONAL OFFICER CORONA, CORRECTIONAL OFFICER VELASQUEZ and DOES 1-10,
Defendants.

Case No.: 3:24-cv-1751-RBM-LR

**ORDER DISMISSING SECOND AMENDED COMPLAINT WITHOUT FURTHER LEAVE TO AMEND PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Ryan Christopher Mickey, a state prisoner proceeding *pro se*, initiated this civil rights action by filing a Complaint pursuant to 42 U.S.C. § 1983 accompanied by the civil filing fee. (Docs. 1-2.) On July 29, 2025, the Court screened the Complaint pursuant to 28 U.S.C. § 1915A, which requires screening of all complaints by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. (Doc. 3.) The Court dismissed the Complaint for failing to state a claim upon which relief may be granted, notified Plaintiff of the deficiencies of his pleading, and granted leave to amend. (*Id.* at 4-8.) Following an extension of time, Plaintiff filed a First Amended Complaint ("FAC"). (Doc. 7.) On April 2, 2026, the Court dismissed the FAC for failing

to state a claim upon which relief may be granted, once again notified Plaintiff of the deficiencies of his pleading, and granted a final opportunity to amend. (Doc. 8.) Plaintiff has now filed a Second Amended Complaint ("SAC"). (Doc. 9.)

## I. SCREENING PURSUANT TO 28 U.S.C. § 1915A

### A. Standard of Review

The Court must conduct an initial review of the SAC under 28 U.S.C. § 1915A, which "mandates early review—'before docketing [] or [] as soon as practicable after docketing'—for all complaints 'in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016) (quoting 28 U.S.C. § 1915A(a)). "'On review, the court shall . . . dismiss the complaint, or any portion of the complaint,' if it '(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.'" *Olivas v. Nevada ex rel. Dep't of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (quoting 28 U.S.C. § 1915A(b)).

Screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). "The Rule 12(b)(6) standard requires a complaint to 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). There must be more than "labels and conclusions" or "a formalistic recitation of the elements of a cause of action," to plausibly state a claim, because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678. "Under § 1915A, when determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint [fails to state a claim]." *Iqbal*, 556 U.S. at 679.

**B. Allegations in the Second Amended Complaint**

Plaintiff alleges that on July 22, 2024, while housed at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, Defendant RJD Correctional Officer Sergeant Williams approached Plaintiff while he was walking on the yard with another inmate and ordered Plaintiff to submit to a search, despite Plaintiff having exhibited no disruptive behavior or suspicious conduct. (Doc. 9 at 4.) During the search Williams found a small necklace which Plaintiff had picked up and was intending to turn in. (*Id.*) Williams later issued a disciplinary write-up relating to possession of contraband. (*Id.*) Plaintiff alleges the disciplinary action "was retaliatory and unjustified." (*Id.*) He was found guilty despite having explained the innocent circumstance in which he found the necklace, which he contends is shown on surveillance video. (*Id.*)

Plaintiff alleges that on August 8, 2024, another inmate was temporarily placed in his cell. (*Id.*) Plaintiff informed Defendant RJD Correctional Officer Velasquez he and the new cellmate were incompatible and requested the inmate be housed elsewhere, as Plaintiff was attempting to stay discipline free due to parole and commutation concerns. (*Id.* at 5.) Although Velasquez initially agreed to move the inmate, Plaintiff later observed Velasquez speaking to Defendant RJD Correctional Officer Corona at the podium while gesturing towards Plaintiff's cell and a nearby cell. (*Id.*) Plaintiff heard Corona say: "Fuck that motherfucker, you need to write him up. We are going to get that motherfucker," and Corona said something "to the effect that Plaintiff 'would never go home.'" (*Id.*) Plaintiff claims Corona was aware of his efforts to secure parole or commutation of his sentence. (*Id.*) Plaintiff was later issued a disciplinary write up for refusal of a cellmate, which he successfully challenged, and which he alleges "was false and retaliatory." (*Id.* at 5–6.)

Finally, Plaintiff alleges that on September 1, 2024, he was called to the program office concerning another disciplinary matter where Williams aggressively confronted him about the earrings he was wearing. (*Id.* at 6.) Plaintiff told Williams the earrings were permanently crimped and could not be simply removed. (*Id.*) Williams said, "words to the effect of: 'I'll pin you down and cut them out myself,'" which caused Plaintiff to believe

Williams intended to assault him. (*Id.*) When Plaintiff moved into camera view and asked if Williams intended to assault him, Williams retreated into the office. (*Id.* at 6–7.) Plaintiff later had the earrings removed by medical staff due to Williams's threat. (*Id.* at 7.) Although the SAC also names Doe Defendants, there are no allegations against them.

Plaintiff alleges the Defendants' actions were "in retaliation for Plaintiff's legal efforts, grievance activity, and potential release opportunities" which has caused him emotional distress, fear, anxiety, mental anguish and concern for his personal safety and ability to obtain release from prison, and that the disciplinary write-ups became part of his central file and were discussed during the denials of his parole and commutation proceedings. (*Id.*) He claims the Defendants: (1) retaliated against him in violation of the First Amendment by issuing false disciplinary reports and making threats and harassing him for pursuing grievances, legal relief and release-related efforts; (2) violated his Fourteenth Amendment right to due process by subjecting him to false and retaliatory disciplinary proceedings without fair procedures; (3) violated the Eighth Amendment by threatening him; and (4) violated equal protection by harassing Plaintiff, who is White, for wearing earrings similar to those Black inmates wear without harassment. (*Id.* at 7–10.)

**1. Due Process**

Plaintiff alleges, as he did in the two previous versions of his complaint, that his right to due process was denied by the filing of false disciplinary charges and denial of unspecified procedural rights at the disciplinary hearings. (Doc. 1 at 3; Doc. 7 at 2; Doc. 9 at 8–9.) The Court has twice previously informed Plaintiff that in order to show that a disciplinary proceeding implicates a liberty interest protected by federal due process, he must show that his sentence was exceeded in "an unexpected manner" or resulted in "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (Doc. 4 at 5; Doc. 8 at 4 (both quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).) Plaintiff was twice instructed that his allegations of false disciplinary actions do not state a due process claim because "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports." (Doc. 4 at 6; Doc. 8 at 5 (both quoting

*Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) and citing *Gadsden v. Gehris*, No. 20cv0470-WQH (DEB), 2020 WL 5748094, at *8 (S.D. Cal. Sep. 25, 2020) ("The allegations of the filing of false disciplinary charges by itself does not state a claim under 42 U.S.C. § 1983 because federal due process protections are contained in the ensuing disciplinary proceedings themselves.")).) Plaintiff has also twice been instructed that his allegation that he was denied due process during his disciplinary proceedings because he was denied unidentified procedural protections fails to state a claim because it is entirely conclusory. (*See* Doc. 4 at 6; Doc. 8 at 5.) Plaintiff was previously informed that such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim under 42 U.S.C. § 1983 (*see* Doc. 4 at 2, 6 (quoting *Iqbal*, 556 U.S. at 678)), and was instructed that if he wished to proceed with this claim he must set forth specific factual allegations regarding the nature of the disciplinary proceedings sufficient to plausibly allege they gave rise to a protected liberty interest and identify the evidence and witnesses he was prevented from calling or introducing. (*See* Doc. 8 at 5.) Plaintiff has not cured any of these pleading deficiencies in the SAC, but once again relies on allegations of false disciplinary charges and denial of unspecified procedural protections. (Doc. 9 at 4–6.)

Accordingly, Plaintiff's Fourteenth Amendment due process claim is dismissed *sua sponte* pursuant to 28 U.S.C. § 1915A for failure to state a claim. *See Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 679. Because Plaintiff has twice been informed of the same pleading deficiencies and it is now clear he is unable to state a due process claim upon which relief may be granted, the dismissal is without further leave to amend. *See Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002) (recognizing futility of amendment as a proper basis for dismissal without leave to amend).

**2. Eighth Amendment**

Plaintiff alleges he was subjected to cruel and unusual punishment in violation of the Eighth Amendment because Defendant Williams harassed and threatened to physically assault him by threatening to forcibly remove his earrings, and because Defendant Corona

made a verbal threat that "[w]e are going to get that motherfucker," and that Plaintiff "would never go home." (Doc. 9 at 5–7.)

Plaintiff's allegations that he was threatened and harassed fail to state a claim for the same reasons provided in the Court's two prior dismissal orders, because the mere making of threats or harassing comments do not give rise to an Eighth Amendment claim. (Doc. 4 at 4–5 and Doc. 8 at 6 (both citing *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998) (verbal harassment is not cognizable as a constitutional deprivation under § 1983), *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment or abuse is not constitutional deprivation under § 1983), *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (finding it "trivializes the Eighth Amendment to believe a threat constitutes a constitutional wrong"), and *Somers v. Thurman*, 109 F.3d 614, 622 (9th Cir. 1997) (holding that "the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons" of which "we do not approve," but which do not violate the Eighth Amendment)).) Plaintiff has not cured that defect of pleading an Eighth Amendment claim in the SAC, as he again merely alleges he was subjected to threatening and harassing comments. (Doc. 9 at 5–7.)

Plaintiff's Eighth Amendment claim is dismissed *sua sponte* under 28 U.S.C. § 1915A for failure to state a claim. *See Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 679. Because Plaintiff has twice been informed of the same pleading deficiencies and has not cured them, the dismissal is without further leave to amend. *Schmier*, 279 F.3d at 824.

**3. Equal Protection**

Plaintiff alleges in the SAC that Defendant Williams, who is Black, was motivated by racial animus against Plaintiff, who is White, when harassing him for wearing earrings similar to those which Black inmates wear without being harassed. (Doc. 9 at 10.) Plaintiff was instructed in the prior dismissal orders that to bring an equal protection claim he must set forth facts which plausibly allege intentional discrimination based on membership in a protected class. (Doc. 4 at 6–7 and Doc. 8 at 7 (both citing *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013), *Maynard v. City of San Jose*, 37 F.3d

1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status."), and *Taylor v. Delatoore,* 281 F.3d 844, 849 (9th Cir. 2002) (prisoners are not a protected class for purposes of stating an equal protection claim).) The SAC once again merely alleges that Williams is a different race than Plaintiff, but again without any factual allegations plausibly alleging any Defendant was motivated by racial animus. (Doc. 9 at 10.)

Plaintiff's equal protection claim is dismissed *sua sponte* pursuant to 28 U.S.C. § 1915A for failure to state a claim. *See Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 679. Because Plaintiff has twice been informed of the same pleading deficiencies and it is now clear he is unable to state an equal protection claim upon which relief may be granted, the dismissal is without further leave to amend. *Schmier*, 279 F.3d at 824.

**4. Retaliation**

Finally, Plaintiff alleges that Defendants took their actions, including threats, false disciplinary charges and harassment, in retaliation against him for "pursuing grievances, legal relief, innocence Center communication, and release-related efforts." (Doc. 9 at 8.) He alleges that "prior to the incidents described herein, attorneys affiliated with the Innocence Center visited Plaintiff regarding possible post-conviction relief and potential release efforts. Plaintiff also communicated with a senator regarding his case and possible release. . . . [and] immediately after staff became aware of these release efforts, . . . Defendants began targeting Plaintiff with retaliatory disciplinary actions and harassment designed to damage Plaintiff's parole and commutation opportunities." (*Id*. at 3–4.)

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (2005) (footnote omitted). "[T]he mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." *Brodheim v.*

*Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009); *see also Watison v. Carter*, 668 F.3d 1108, 1115 (9th Cir. 2012) (false disciplinary charges may constitute adverse action). However, Plaintiff must also allege a retaliatory motive, that is, a causal connection between the adverse action and his protected conduct. *Watison,* 668 F.3d at 1114.

In the Court's prior dismissal orders, Plaintiff was informed that even if he could identify an adverse action, he had not plausibly alleged any Defendant took an adverse action against him because of any protected conduct. (Doc. 4 at 7–8 and Doc. 8 at 8–9 (both citing *Rhodes*, 408 F.3d at 567–68 and *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (plaintiff must show that the protected conduct was a "substantial" or "motivating" factor in the defendant's decision to act)).) Plaintiff alleges that after requesting a cellmate change due to incompatibility, he saw Defendants Velasquez and Corona talking and pointing at his and another cell and heard Corona say: "Fuck that motherfucker, you need to write him up. We are going to get that motherfucker," and something "to the effect that Plaintiff 'would never go home.'" (Doc. 9 at 5–6.) Plaintiff claims Corona was aware of his efforts to secure parole or commutation of his sentence, and that he was later issued a disciplinary write up for refusal of a cellmate, which he successfully challenged. (*Id.*) Plaintiff was previously instructed (Doc. 8 at 9), that although the timing of a defendant's actions may "be considered as circumstantial evidence of retaliatory intent," timing alone is generally not enough to support an inference of retaliatory intent. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials retaliated on the basis of an inmate's First Amendment activity). Rather, courts must consider retaliation claims both "in the light of the timing and the surrounding circumstances." *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003). Plaintiff was instructed that if he wished to proceed with his retaliation claim he must set forth specific factual allegations plausibly showing that a Defendant took an adverse action against him and that his protected activity was a substantial or motivating factor in a Defendant's decision to act. (*See* Doc. 8 at 9.) The SAC once again fails to

include specific factual allegations connecting any Defendants' action with any protected activity. Plaintiff fails to plausibly allege the disciplinary charge for refusing a cellmate was based on anything other than his refusal to accept the cellmate, and does not plausibly allege that Corona's remark that Plaintiff needed to be written up for refusing a cellmate was based on retaliation simply because Corona or other Defendants were aware he was attempting to obtain release on parole or commutation. *See Iqbal,* 556 U.S. at 678 (the "mere possibility of misconduct" falls short of meeting the plausibility standard); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient.")

Plaintiff's retaliation claim is dismissed *sua sponte* pursuant to 28 U.S.C. § 1915A for failure to state a claim. *See Wilhelm*, 680 F.3d at 1121; *Iqbal*, 556 U.S. at 679. Because Plaintiff has twice been informed of the same pleading deficiencies and it is now clear he is unable to state a retaliation claim, the dismissal is without further leave to amend. *Schmier*, 279 F.3d at 824.

## II. CONCLUSION AND ORDER

The Court **DISMISSES** Plaintiff's Second Amended Complaint pursuant to 28 U.S.C. § 1915A for failing to state a claim upon which relief may be granted without further leave to amend. The Clerk of Court shall enter a final judgment and close the file.

**IT IS SO ORDERED**.

Dated: July 24, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE